

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SPERANSA BATTI, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-00059-A |
| | § | |
| NANCY A. BERRYHILL, | § | |
| ACTING COMMISIONER OF | § | |
| SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Speransa Batti ("Batti") filed this action pursuant to section 405(g) and 1383(c) of Title 42 of the United States Code for judicial review of the Commissioner of Social Security's final decision denying her claim for disability insurance benefits ("DIB") under Title XVI of the Social Security Act ("SSA"). On July 8, 2013, Batti protectively filed an application for DIB, alleging her disability began on July 1, 2013.[1] (Transcript ("Tr.") 14; see Tr. 138-140.) After her application for DIB was denied both initially and on reconsideration, Batti requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 14; see Tr. 84-95.) The ALJ held a

---

[1] In her application, Batti claimed her disability began on March 3, 2013. (Tr. 14.) However, at the hearing before the Administrative Law Judge, Batti amended the onset of disability date to July 1, 2013. (Tr. 14, 35.)

1

hearing on June 2, 2015 and issued a decision on September 11, 2015, in which the AJL found Batti was not disabled because she was capable of performing her past relevant work as a housekeeping cleaner and greenhouse worker. (Tr. 14-25, 30-60.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416 (SSI). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520

First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing. 20 C.F.R. Pt. 404 Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* § 404.1520(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* § 404.1520(g); *Crowley v. Apfel*, 197

F.3d 194, 197-98 (5th Circ. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Batti presents the following issues:

1. Whether the ALJ erred by failing to provide any discussion of why her intellectual disability impairment does not meet Listing 12.05C; and

3

2. Whether the ALJ erred in failing to properly evaluate the medical opinion of the only examining source in her case.

(Plaintiff's Brief ("Pl.'s Br.") at 2.)

## IV. ALJ DECISION

In his September 11, 2015 decision, the ALJ concluded that Batti was not disabled within the meaning of the SSA. (Tr. 25.) In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process set forth above. (Tr. 15-16.) At Step One, the ALJ found that Batti did not engage in substantial gainful activity after July 1, 2013, her amended onset of disability date. (Tr. 16.) Although Batti's earnings records reflect earnings for the third quarter of 2014 and Batti testified she worked for about a week in 2015, the ALJ determined that Batti's "earnings for both periods were nowhere near the level of substantial gainful activity." (Tr. 17.) At Step Two, the ALJ found that Batti had the following "severe" impairments: (1) depressive disorder and (2) borderline intellectual functioning.[2] (Tr. 17.) At Step Three, the ALJ stated that

---

[2] The Court notes that federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." See 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings (except for Listings 12.05 and 12.09), the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c). "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3) (recently revised to state the four broad functional areas are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must generally find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1. If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. § 404.1520a(d). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed

Batti did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 17-19.) In his analysis, the ALJ stated:

> In activities of daily living, the claimant has a mild restriction. She lives with family. She wakes up, handles her personal care, and has coffee. She spends the rest of the day doing chores about an hour at a time, and she goes to bed at about ten p.m. She can count money slowly, use the microwave and tell time. She knows how to cook and to grocery shop.
>
> In social functioning, the claimant has a mild difficulty. She has a good relationship with her cousin, who helps her fill out paperwork. She denied difficulty with persons in authority. She enjoyed interacting with her young grandchild. She has no friends she interacts with at this time, and she spends free time with relatives.
>
> With regards to concentration, persistence, or pace, the claimant has moderate difficulties. The consultative examiner noticed the claimant responded slowly and had difficulty with academic skills as well as attention, concentration, and short-term memory. The claimant could repeat five digits forward and two digits backwards. In order to perform the task of repeating digits backward, visual cues had to be used. She learned a list of three words after one repetition. She could recall two out of three words after a five-minute interval, and prompting did not improve her performance. She solved basic mathematical calculations slowly.

(Tr. 18-19 (internal citations omitted).) At Step Four, the ALJ found that Batti had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but had the following nonexertional limitations: (1) she is limited to occupations with a reasoning development level of 1 or 2, as defined in the *Dictionary of Occupational Titles,* and (2) she cannot perform an occupation requiring reading or math skills over the second grade level. (Tr. 19 – 23.). At Step Five, the ALJ held that Batti was capable of performing her past relevant work as a housekeeping cleaner and greenhouse worker. (Tr. 23.). Accordingly, the ALJ found

---

mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705.

The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

that Batti was not disabled, as defined in the SSA, from July 1, 2013 through the date of his decision. (Tr. 25.)

V. DISCUSSION[3]

A. <u>Section 12.05C of the Listing</u>

In her brief, Batti argues that the ALJ erred by failing to discuss why Plaintiff's intellectual disability did not meet section 12.05C of the Listing. Batti argues that, since she has (1) a valid IQ score of 70 or lower; (2) one other "severe impairment" (as defined in the regulations); and (3) evidence of adaptive deficits prior to age twenty-two, she met section 12.05C of the Listing. Thus, Batti claims that the ALJ erred by failing to make such a finding and remand is required. (Pl.'s Br. at 9-10.)

To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing. 20 C.F.R. § 404.1520(a)(4)(iii). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). When determining whether an impairment medically equals a listing, the

---

[3] The Court notes that several of the regulations and applicable SSRs governing social security cases were recently amended or rescinded. *See, e.g.*, 82 Fed. Reg. 58,4401. These new rules generally apply to claims filed on or after March 27, 2017 and so are not applicable to this case. *Id.* Thus, any cites (unless otherwise noted) will be to the old rules that are applicable to claims filed prior to March 27, 2017.

Commissioner considers all relevant evidence[4] in the record about such impairment, including findings from medical sources. 20 C.F.R. § 404.1526(c). Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish

---

[4] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 404.1526(c).

7

that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Section 12.05 of the Listing[5], which deals with intellectual disability, states:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e., the evidence demonstrates or supports onset of the impairment before age 22.*

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidence by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function:

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05 (emphasis added).

---

[5] The Court notes that Section 12.05 of the Listing was revised effective January 17, 2017, after the date of the ALJ's decision on September 11, 2015. According to the supplementary information in the Federal Register, the Federal Courts are to review any final decisions "using the rules that were in effect at the time [the ALJ] issued the decisions." 81 Fed. Reg. 66,138 (Sept. 26, 2016). Accordingly, the Court will review the ALJ's decision according to the terms of section 12.05 as set forth above, which were the terms of this section at the time of the ALJ's decision.

8

In this case, Batti's main argument is that the ALJ erred by failing to discuss whether she met section 12.05C of the Listing in the ALJ's decision at Step Three. (Pl's Br. at 8.) However, to meet the threshold requirements of Listing 12.05C, there must be evidence that Batti met the diagnostic description of intellectual disability applicable to all subsections of Listing 12.05. *See Ledet v. Colvin*, No. 15-4651, at *7 (E.D. La. May 3, 2016) ("Before proceeding any further in the disability eligibility analysis, Appellant must satisfy the diagnostic definition of intellectual disability . . ."); *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) (stating that "every mental disorder listing includes two independent components: a diagnostic description of the disorder and specific criteria measuring the disorder's severity"). To meet the diagnostic criteria in section 12.05, a claimant must: (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive functioning; and (3) have manifested deficits in adaptive behavior before age 22. *Randall,* 570 F.3d at 659-61. A claimant who fails to meet the stated criteria by even a slight margin fails to qualify for presumptive disability under the listings. *See Zebley,* 493 U.S. at 530.

Adaptive functions include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1); *Blackstock v. Astrue*, 527 F. Supp. 2d 604, 619 n.14 (S.D. Tex. Dec. 6, 2007). "To evaluate deficits in adaptive functions, courts look at a claimant's ability to live on his own, as well as dress himself and prepare simple meals" and the claimant's work history. *Potts v. Astrue*, No. H-12-CV-229, 2013 WL 5785659, at *8 (S.D. Tex. Feb. 19, 2013). The purpose of the Listing is to streamline the decision process by identifying those claimants whose mental

impairments are so severe that it is likely they would be found disabled regardless of their vocational background. *Bowen v. Yuckert,* 482 U.S. 137, 153 (U.S. 1987).

In this case, Batti claims that she satisfies the first two prongs of Listing 12.05C for an intellectual disability as she scored a full scale IQ score of 64 in testing performed by Deborah Gleaves, Ph.D. ("Dr. Gleaves"), in a consultative examination on October 2, 2013 (Tr. 258-59) and had another severe impairment of depression in addition to her intellectual disability. (Pl.'s Br. at 10-11.) However, to meet any subsection of section 12.05 of the Listing, including 12.05C, Batti must also have, *inter alia,* exhibited deficits in adaptive functioning that manifested prior to the age of twenty-two. *See Morris v. Astrue,* No. 10-3339, 2011 WL 7341504, at *9 (E.D. La. Dec. 14, 2011); *Blackstock,* 527 F. Supp. 2d at 619.

In support of her claims that she exhibited deficits in adaptive functioning prior to the age of twenty-two, Batti points to, *inter alia,* the following evidence: (1) Batti has a low IQ score and the "Fifth Circuit has acknowledged that a low IQ creates a rebuttable presumption of intellectual disability dating back to one's youth, even if tested subsequent to age 22" (Pl.'s Br. at 12); (2) Batti has only a limited education in that she repeated the first grade, began special education classes in middle school and dropped out of school in the tenth grade[6] (Pl.'s Br. at 13); (3) in a consultative examination, Dr. Gleaves observed the following: (a) Batti responded slowly and had difficulty with academic skills as well as attention, concentration, and short-term memory, (b) Batti's ability to cope with stress was limited, (c) Batti did not understand Dr. Gleaves' presentation of serial 3s and could not spell the word "world," (d) Batti read and performed mathematical computations at a second grade level and spells at a first grade level, and (e) Batti's "test results suggested she has below average cognitive ability and academic skills

---

[6] The Court notes that there is an apparent discrepancy regarding the amount of formal education that Batti received. Batti reported to Dr. Gleaves that she completed the ninth grade (Tr. 255), while she testified in the hearing before the ALJ that she stopped attending school after the tenth grade (Tr. 36).

10

consistent with her low level of intellectual function, and while she has relatively better efficiency for visually mediated tasks, her problems with information processing and working memory would make it difficult to function effectively in the work place (Pl.'s Br. at 13; *see* Tr. 259-254-61); and (4) Batti has not maintained any kind of consistent work throughout her life, only barely achieving substantial gainful activity 10 out of 37 years attempted (Pl.'s Br. at 13). In addition, Batti stated:

> While Plaintiff is able to shop for food when her food stamps come in, she spends an extended amount of time grocery shopping as she forgets why she came in the first place. Tr. 176. She can pay bills and handle a savings account; however, she cannot count change or use a checkbook/money orders as she does not know how to read. *Id.* Plaintiff spends time with her cousin three or four times a week, who has accompanied her to assist in completing job applications. Tr. 173; 177. She has difficulty following spoken directions, and is unable to read written instructions. Tr. 178. She was terminated from her job as a cleaner for not following the rules, and indicated that she is intimidated by supervisors and authority figures. Tr. 179. She further detailed this incident in her testimony, remarking that she was terminated cleaner [sic] because she did not wear the correct type of gloves to clean as she was asked. Tr. 42. She was also admonished for forgetting to put paper towels in the men's bathrooms, and forgot to take out the trash in break rooms. Tr. 43.
>
> While performing her past work as a cleaner, Plaintiff testified that she was not able to read the work schedules and instructions as to where she had to clean, and often had to rely on others to help her read. Tr. 42. While working at a greenhouse, Plaintiff was able to plant, however, was unable to provide customers (to whom she was responsible to help make the proper selection) with the name of plants as she could not remember. Tr. 45. She becomes upset when having to learn something new and does not respond well to changes or stress. *Id.* She needs reminders to clean her house. Tr. 190. Plaintiff did not complete her own adult function reports. (Tr. 195.)

(Pl.'s Br. at 14.)

The Court notes that "the mere existence of IQ scores which satisfy the first part of paragraph C, along with limited or special education" are not sufficient, in and of themselves, to demonstrate deficiencies in adaptive functioning prior to the age of twenty-two. *Parker v. Astrue*, No. 11-294-SCR, 2012 WL 5384821, at *4 (M.D. La. Nov. 1, 2012); *see Causey v.*

11

*Colvin*, No. 5:14-CV-76-MTP, 2015 WL 9413140, at *9 (Dec. 22, 2015); *Puente v. Colvin*, No. H-12-3587, 2014 WL 1118148, at *7 (S.D. Tex. Mar. 19, 2014); *Potts*, 2013 WL 5785659, at *8 (claimant's "poor performance in school, his past history as a special education student, and his illiteracy" are insufficient to meet his burden of establishing a "deficit in adaptive functioning" as required by Listing 12.05(C))." Moreover, the evidence shows that Batti was capable of cooking, handling her own personal care, doing work around the house, and occasionally watching television. (Tr. 175-177, 189-92, 255.) She also reported the ability to drive a car, go shopping, pay bills, and handle a savings account. (Tr. 175-77, 189-92, 255.)[7] In addition, even Dr. Gleaves opined that Batti's **adaptive functioning skills** did not qualify her for an intellectual disability diagnosis as he diagnosed borderline intellectual functioning, **not** intellectual disability. (Tr. 260.) *See Ledet v. Colvin*, No. 15-4651, 2016 WL 3079026, at *7-11 (E.D. La. May 3, 2016). Because Batti has failed to set forth evidence showing deficits in her adaptive functioning prior to age twenty-two, any error by the ALJ in failing to consider section 12.05C of the Listing is harmless error and remand is not required.

Batti also argues that the ALJ erred in failing to discuss whether her impairments were medically equivalent to Listing 12.05C. (Pl.'s Br. at 17-18.) However, to show medical equivalence, Batti must have "presented 'medical findings equal in severity to *all* the criteria' for listing 12.05C, which, again, includes the introductory paragraph in section 12.05 plus subparagraph C." *Bliss v. Colvin*, No. 6:14-CV-016-C, 2015 WL 3507892, at *4 (N.D. Tex. June 2, 2015) (quoting *Zebley*, 493 U.S. at 531). In this case, Batti's only argument relating to medical equivalence is that the ALJ erred because she failed to "provide any reasoning regarding

---

[7] *See Blancas v. Astrue*, 690 F. Supp. 2d 464, 480 (W.D. Tex. 2010) ("The lack of a clear standard for measuring deficits in adaptive functioning is not problematic in [ ] clear-cut cases, but creates difficulties in borderline cases . . . .").

12

Listing 12.05." (Pl.'s Br. at 17.) Again, any such error is harmless as Batti has failed to meet her burden of showing exactly how her impairment equaled section 12.05 of the Listing.

**B. Medical Opinion Evidence**

In her brief, Batti also claims that substantial evidence does not support the ALJ's evaluation of the medical opinion evidence in the record. (Pl.'s Br. at 18.) Specifically, Batti claims that the ALJ did not properly evaluate the October 2013 opinions by Dr. Gleaves, the consultative examiner and only physician that examined Batti. (Pl.'s Br. at 18-23; see Tr. 254-261.) Batti states that the ALJ erred by assigning "very little" weight to Dr. Gleaves' opinions regarding Batti's ability to work as the ALJ failed to point out any inconsistent medical evidence. (Pl.'s Br. at 19-23.) Batti also claims that the ALJ erred in not considering the factors set forth in 20 C.F.R. 404.1527(c) prior to giving "little weight" to Dr. Gleaves' opinions and by relying on the opinions of the State Agency Medical Consultants ("SAMCs") who never examined Batti. (*Id.*)

As to the opinion evidence in the record, the ALJ, *inter alia*, stated:

Dr. Deborah Gleaves offered the following opinions:

> The claimant is able to understand, remember, and carry out one- and two-step commands. The claimant is not able to do the same with complex instructions. Her ability to sustain concentration and persist in work-related activity at a reasonable pace is impaired by her low intellectual functioning and poor processing speed, as well as her depression. She should be able to maintain appropriate social interaction with supervisors, coworkers, and the public. She will have difficulty dealing with normal pressures in the competitive workforce due to her limited intellectual functioning and depression. (End of her opinion) (Internal citations omitted).

I gave very little weight to Dr. Gleaves' opinions regarding the claimant's ability to work because it was primarily based on the claimant's statements rather that the longitudinal medical history of the claimant. Furthermore, the State agency consultants' opinions were consistent with the medical evidence and the claimant's testimony, and I gave them much more weight. No other medical

source opined the claimant would have difficulty dealing with normal pressures in the competitive workforce due to her limited intellectual functioning and depression. Finally, the limited medical evidence did not support the opinion that the claimant would have problems dealing with pressures in the competitive workforce. Therefore, I gave Dr. Gleaves' opinions very little weight.

The State agency mental health consultants at the initial level of review opined the claimant had a mild restriction in activities of daily living, mild difficulty in maintaining social functioning, a moderate limitation in maintaining concentration, persistence, and pace, and no repeated episodes of decompensation, each of extended duration. The consultant further opined the claimant could maximally understand, remember, and carry out only simple instructions, make decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting; the consultant did not assess any social limitations. At the reconsideration level, the State agency consultant opined the claimant was moderately limited in social functioning and so had social interaction limitations concerning supervisors and coworkers; the consultant's opinions otherwise were consistent with the opinions at the initial level. The consultant at the reconsideration level nonetheless concluded the claimant could interact adequately with coworkers and supervisors.

I gave these opinions very significant weight, as their opinions were very consistent with the remaining medical evidence. After reviewing the evidence, including the claimant's testimony, I found that the social limitations at the reconsideration level were not supported, and I did not accept them. I therefore did not include a corresponding limitation in my residual functional capacity finding. I agreed with the consultant at the initial level that the claimant had only a mild limitation in social functioning and that no corresponding limitation was appropriate in her residual functional capacity. I agreed with both consultants that the claimant is limited to simple work, and I included this limitation in my residual functional capacity finding. I also considered that these consultants have expertise concerning the Social Security Administration's disability program rules and regulations and that they are "acceptable medical sources" under the Agency's regulations. Nonetheless, whether the claimant is limited in her social interaction with supervisors and coworkers is not outcome-determinative, as discussed below.

In summary, the above residual functional capacity finding was supported by the claimant's statements, the medical evidence, and the opinion evidence.

(Tr. 22-23 (internal citations omitted).).

Here, it appears Batti only made one visit to Dr. Gleaves for a consultative examination, which occurred in October 2013. (*See* Tr. 253-61.) Thus, Dr. Gleaves is justly classified as a

non-treating source in the context of Batti's appeal.[8] Findings of fact made by consultative examiners regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 34180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not limited by the consultative examiners opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2.

While an ALJ is to consider all medical opinions in determining the disability status of a claimant (see 20 C.F.R. § 404.1527(b)), the ALJ is not required to give controlling weight to medical opinions of non-treating sources. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 637 (N.D. Tex. 2013) (stating that an ALJ is not required to give the opinion of, *inter alia*, a consultative examiner controlling weight). In other words, the ALJ must only consider Dr. Gleaves' opinions as evidence to be weighed. *Id.* Accordingly, her medical opinions do not have controlling weight over Batti's case, and the ALJ had the authority to reject Dr. Gleaves' medical opinions insofar as there is contradictory evidence in the record.

In this case, the ALJ properly considered the October 2013 opinions of Dr. Gleaves as the ALJ thoroughly discussed such opinions throughout his decision. (Tr. 20, 22.) The ALJ ultimately decided to give Dr. Gleaves' opinions "very little weight" because: (1) "[they were] based primarily on the claimant's statements rather than the longitudinal medical history of the claimant" and (2) the State Agency Medical Consultant's opinions were more consistent with the

---

[8] "Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [a claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]. 20 C.F.R. § 404.1502. The term includes an acceptable medical source who is a consultative examiner for [the Social Security Administration], when the consultative examiner is not [the claimant's] treating source." *Id.*

15

medical evidence and Batti's testimony. (Tr. 22-23.) Moreover, the ALJ was not required to apply the factors listed in 20 C.F.R. 404.1527(c) prior to giving Dr. Gleaves' opinions very little weight because such requirement only applies to opinions of treating physicians and not consultative examiners such as Dr. Gleaves. *See Sanchez v. Berryhill*, No. M-16-030, 2017 WL 2117526, at *5 (S.D. Tex. Mar, 31, 2017) ("The ALJ was not required to perform a detailed analysis of the "*Newton* factors" before declining to adopt or give significant weight to Dr. De Ferreire's findings and opinions because she is not a treating physician, but rather, Dr. De Ferreire acted as a consultative examiner."); *Ruffins v. Collins*, No. 14-754-RLB, 2016 WL 617445, at *3 (M.D. La. Feb. 16, 2016) ("[T]he factors set forth in 20 C.F.R. 404.1527(c) are not applicable because Dr. Van Hook is not a treating physician."). Because the ALJ properly considered Dr. Gleaves' opinions, as well as the other medical opinions in the record, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error

16

or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 31, 2017**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 17, 2017.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv